16-CV-6773 (ILG)(JO)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NATHANIEL NEWSON,

Plaintiff,

- against -

THE CITY OF NEW YORK,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Carolyn K. Depoian*
*Tel:  (212) 356-2358*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iv

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF ALLEGED FACTS ................................................................... 1

STANDARD OF REVIEW ............................................................................ 5

ARGUMENT

    POINT I

        PLAINTIFF HAS FAILED TO STATE A CLAIM THAT HIS FOURTEENTH AMENDMENT DUE PROCESS *BRADY* RIGHTS WERE VIOLATED ..................................6

        A.  Plaintiff has not Adequately Alleged that his <u>Brady</u> Rights Were Violated by the QCDA ...................................6

        B.  Plaintiff has not Adequately Alleged that his <u>Brady</u> Rights Were Violated by the NYPD. ...................................8

        C.  Plaintiff's Acquittal Precludes his <u>Brady</u> Claim. .................................................................8

    POINT II

        PLAINTIFF HAS FAILED TO STATE A CLAIM THAT HIS FOURTH AMENDMENT RIGHTS WERE VIOLATED. .................................................9

        A.  Plaintiff Does Not Allege Facts to Support a False Arrest ClaimAgainst Any Member of the NYPD ...................................................10

        B.  Plaintiff Does Not Allege Facts to Support a Malicious Prosecution Claim Against Any Member of the NYPD. ...................................11

    POINT III

        PLAINTIFF'S *MONELL* CLAIMS AGAINST THE QCDA IS UNTENABLE. .............................................12

**Page**

A.   There Has Been No Underlying Constitutional Violation....................................................12

B.   The City Cannot be Liable for the QCDA's Prosecutorial Decisions.....................................13

C.   Plaintiff Fails to Demonstrate an Official Policy or Custom Caused His Constitutional Injury........................................................................14

     i.   Plaintiff Fails to Allege Facts Sufficient to Establish an Unconstitutional Practice So Persistent and Widespread That It Constitutes a Custom or Usage................................15

     ii.   Plaintiff Fails to Allege Facts Sufficient to Establish a Failure to Train or Supervise Rising to the Level of Deliberate Indifference. ...................18

POINT IV

PLAINTIFF'S *MONELL* CLAIM AGAINST THE NYPD IS UNTENABLE..........................................20

A.   There Has Been No Underlying Constitutional Violation....................................................20

B.   Plaintiff Fails to Demonstrate an Official Policy or Custom Caused His Constitutional Injury........................................................................20

     i.   Plaintiff Fails to Allege Facts Sufficient to Establish an Unconstitutional Practice So Persistent and Widespread That It Constitutes a Custom or Usage................................21

**Page**

   ii. Plaintiff Fails to Allege Facts Sufficient to Establish a Failure to Train or Supervise Rising to the Level of Deliberate Indifference. ...................................................23

POINT V

  THE COURT SHOULD NONETHELESS DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS. ...................................................................24

POINT VI

  CLAIMS FOR FALSE ARREST AND MALICIOUS PROSECUTION CANNOT BE BROUGHT AGAISNT THE CITY OF NEW YORK. ...................................................................24

POINT VII

  PLAINTIFF'S PENDENT STATE LAW "NEGLIGENT PROSECUTION" CLAIM SHOULD BE DISMISSED. ...............................................................25

CONCLUSION....................................................................................................... 26

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                      <u>**Pages**</u>

Agnello v. Straitiff et al.,
   2011 U.S. Dist. LEXIS 41144  (W.D.Pa. April 15, 2011)......................................................18

Ambrose v. City of New York,
   02-CV-10200 (KMK) 623 F. Supp. 2d. 454 (2009) .............................................................. 8-9

Ashcroft v. Iqbal,
   556 U.S. 662 (2009).........................................................................................................5, 7, 21

Atuahene v. City of Hartford,
   10 F. App'x 33 (2d Cir. 2001) ................................................................................................11

Batista v. Rodriguez,
   702 F.2d 393 (2d. Cir. 1983)............................................................................................19, 23

Bd. of the Cnty. Comms. of Bryan Cnty., Okla. v. Brown,
   520 U.S. 397 (1997)................................................................................................................15

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)........................................................................................................5, 8, 12

Bellamy v. City of N.Y.,
   12-CV-1025 (AMD)(PK),
   2017 U.S. Dist. LEXIS 75306 (E.D.N.Y. May 17, 2017) .................................................13, 14

Boddie v. City of New York,
   2016 U.S. Dist. LEXIS 50248 (S.D.N.Y. Apr. 13, 2016)...........................................17, 19, 23

Brady v. Maryland,
   373 U.S. 83 (1963)........................................................................................................ passim

Buckley v. Fitzsimmons,
   509 U.S. 259 (1993)................................................................................................................12

Cannistraci v. Kirsopp,
   10-CV-980 (MAD)(DRH),
   2012 U.S. Dist. LEXIS 68399 (N.D.N.Y. May 16, 2012) .......................................................9

Castellano v. Bd. of Trustees, et al.,
   937 F.2d 752, 758 (2d Cir. 1991),
   cert. denied, 502 U.S. 941 (1991) .........................................................................................24

City of Canton v. Harris,
   489 U.S. 378 (1989).........................................................................15, 16, 18, 19, 24

**<u>Cases</u>**                                                                         **<u>Pages</u>**

<u>City of Oklahoma City v. Tuttle</u>,
    471 U.S. 808 (1985)........................................................................................22

<u>City of St. Louis v. Praprotnik</u>,
    485 U.S. 112 (1988)........................................................................................15

<u>Connick v. Thompson</u>,
    563 U.S. 51 (2011)..........................................................14, 15, 18, 19, 20, 23

<u>Costello v. City of Burlington</u>,
    632 F.3d 41 (2d Cir. 2011)..............................................................................11

<u>Davis v. City of New York</u>,
    07-CV-1396 (RPP), 2008 U.S. Dist. LEXIS 47869 (S.D.N.Y. June 19, 2008) .....................21

<u>Dufort v. City of New York</u>,
    12-CV-2283 (SMG), 2016 U.S. Dist. LEXIS 56719 (E.D.N.Y. Apr. 28, 2016)......................9

<u>Farid v. Ellen</u>,
    593 F.3d 233 (2d Cir. 2010)............................................................................10

<u>Gaines v. Armor Health Care, Inc.</u>,
    2013 U.S. Dist. LEXIS 174241 (E.D.N.Y. Dec. 9, 2013) ......................................10

<u>Giaccio v. City of New York</u>,
    308 Fed. Appx. 470 (2d Cir. 2009).................................................................16

<u>Hamilton v. City of New York</u>,
    16-CV-1255 (ARR)(SMG),
    2017 U.S. Dist. LEXIS 16296 (E.D.N.Y. Feb. 6, 2017)..............................11, 25, 26

<u>Jenkins v. City of New York</u>,
    No. 91 Civ. 3639, 1992 U.S. Dist. LEXIS 8279,
    1992 WL 147647 (S.D.N.Y. June 15, 1992) ........................................................25

<u>Jocks v. Tavernier</u>,
    316 F. 3d 128 (2d Cir. 2003)..........................................................................10

<u>Jones v. City of N.Y.</u>,
    12-CV-1739(JBW), 988 F. Supp. 2d. 305 (E.D.N.Y. 2013) ............................13, 14

<u>Jones v. Town of E. Haven</u>,
    691 F.3d 72 (2d Cir. 2012)..............................................................................16

<u>Keilver v. Harlequin Enters. Ltd.</u>,
    751 F.3d 64 (2d Cir. 2014)..............................................................................5

**Cases**                                                                                         **Pages**

Klein & Co. Futures, Inc. v. Bd. of Trade,
    464 F.3d 255 (2d Cir. 2006).................................................................................24

Kramer v. Time Warner Inc.,
    937 F. 2d 767 (2d Cir. 1991)...........................................................................3-4

In re LIBOR-Based Fin. Instruments Antitrust Litig.,
    27 F. Supp. 3d 447 (S.D.N.Y. Jun. 23, 2014)................................................ 11-12

Matican v. City of New York,
    524 F.3d (2d Cir. 2008)..............................................................................12, 20

McCray v. City of New York,
    2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007) .....................................25

Meogrossi v. Colonel John Aubrey et al.,
    No. 3:09-CV-00301 (JDM),
    2011 U.S. Dist. LEXIS 35254 (W.D.Ky. March 31, 2011)...................................18

Missel v. County of Monroe,
    351 Fed. Appx. 543 (2d Cir. 2009) ................................................................21, 23

Mitchell v. Cty. of Nassau,
    No. 05-CV-4957 (SJF)(WDW),
    2007 U.S. Dist. LEXIS 38711 (E.D.N.Y. May 24, 2007) .....................................25

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978)................................................................................ passim

Obilo v. City Univ. Of. N.Y.,
    01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886 (E.D.N.Y. Feb. 28, 2003) .........................3

People v. Baba-Ali,
    179 A.D. 2d 725 (2nd Dept. 1992) .......................................................................17

People v. Davis,
    196 A.D. 2d 597 (2nd Dept. 1993) .......................................................................17

Pinaud v. Cty. of Suffolk,
    52 F. 3d 1139 (2d Cir. 1995).................................................................................13

Pizarro v. City of New York.,
    14-CV-507 (KAM)(VPP),
    2015 U.S. Dist. LEXIS 131471 (E.D.N.Y. Sep. 29, 2015)......................................9

<u>**Cases**</u>                                                                                          <u>**Pages**</u>

Rasmussen v. City of New York,
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) ...................................................................17

Rausman v. Baugh,
    682 N.Y.S.2d 42 (N.Y. App. Div. 1998) ..............................................................24

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007)...............................................................15, 16, 18, 23

Ricciuti v. N.Y.C. Transit Authority,
    941 F.2d 119 (2d Cir. 1991)......................................................................14, 19, 23

Sarus v. Rotundo,
    831 F.2d 397 (2d Cir. 1987)................................................................................18, 23

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)..................................................................................10

Shmueli v. City of New York,
    424 F.3d 231 (2d Cir. 2005)........................................................................12, 25

Sorlucco v. N.Y.C. Police Dep't,
    971 F.2d 864 (2d Cir. 1992)................................................................................16

Strickler v. Greene,
    527 U.S. 263 (1999).............................................................................................9

Trinidad v. City of New York,
    06-CV-3002 (BMC)(LB),
    2006 U.S. Dist. LEXIS 51776 (E.D.N.Y. Jul. 7, 2006) ................................ 21-22

United States v. Bagley,
    473 U.S. 667 (1985)..........................................................................................9

United States v. Coppa,
    267 F.3d 132 (2d Cir. 2001).............................................................................6, 9

United States v. Rivas,
    377 F.3d 195 (2d Cir. 2004)...............................................................................6

Van de Kamp v. Goldstein,
    555 U.S. 335, 129 S. Ct. 855 (2009) ............................................................. 13-14

Watson v. Grady,
    No. 09 Civ. 3055 (KMK),
    2010 U.S. Dist. LEXIS 103473 (S.D.N.Y. Sept. 30, 2010)..................................12

**<u>Cases</u>**                                                                    **<u>Pages</u>**

<u>Wray v. City of New York</u>,
  490 F.3d 189 (2d Cir. 2007)....................................................................15

<u>Wright v. Smith</u>,
  21 F.3d 496 (2d Cir. 1994)....................................................................10

<u>Statutes</u>

28 U.S.C. § 1367(c)(3)........................................................................25

42 U.S.C. §1983........................................................4, 9, 10, 11, 12, 15, 19, 24

Fed. R. Civ. P. 8(a)...........................................................................11

Fed. R. Civ. P. 12 (b) (6)..................................................................1, 5, 27

## PRELIMINARY STATEMENT

Plaintiff Nathaniel Newson brings this action against the City of New York ("City")[1] stemming from his August 2010 arrest and subsequent prosecution.  Plaintiff brings two separate claims, pled in the alternative, against the City.  First, he alleges that the City's policies and/ or practices caused a violation of his constitutional rights pursuant to Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978).  Second, plaintiff brings claims against the City under New York State law for false arrest, malicious prosecution, and negligence.  See Amended Complaint, dated August 21, 2017, annexed to Declaration of Carolyn K. Depoian, (hereinafter "Depoian Decl."), as Ex. A.

Pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), the City moves to dismiss the Amended Complaint in its entirety and with prejudice, on the grounds that plaintiff has failed to allege that his constitutional rights, particularly his Fourteenth Amendment and Fourth Amendment rights, were violated, and plaintiff cannot, therefore, maintain a claim for municipal liability pursuant to Monell.  Because plaintiff's remaining claims lie in State law, the Court should decline to exercise supplemental jurisdiction over the remainder of this case.  Should the Court decide to exercise supplemental jurisdiction, for the reasons provided herein, plaintiff's State law claims should likewise be dismissed with prejudice.

## STATEMENT OF ALLEGED FACTS

Plaintiff alleges that he was wrongfully arrested on August 5, 2010 for the murder of Damian Campbell.  (Depoian Decl., Ex. A at ¶¶17, 18.)  Plaintiff was indicted for the murder on August 13, 2010.  (Id. at ¶25).  The Amended Complaint does not contain any factual

---

[1] Plaintiff has named no other defendants in his action.  Plaintiff does not name, for example, any "John Doe" or "Jane Doe" defendants.

allegations about plaintiff's arrest other than to state in conclusory fashion that it was "false." (Id. at ¶40).

Regardless, according to plaintiff, the New York Police Department ("NYPD") officers collected shell casings from the murder scene.  (Id. at ¶20).  While the Amended Complaint is silent as to the reason for plaintiff's arrest, plaintiff does allege various other inconsequential facts about the events following the murder, such as that there was no gunshot residue on plaintiff, that plaintiff's fingerprints were not found on the victim's property, and that there was no blood spatter on plaintiff from the victim.  (Id. at ¶¶22, 23, 26).  However, plaintiff does not allege that any of this evidence was withheld from the Queens County District Attorney's Office ("QCDA"), and in fact, affirmatively alleges that the lab reports showing that there was no blood spatter on plaintiff were provided to QCDA in a timely fashion.  (Id. at 26). Plaintiff does not allege any wrongdoing on the part of any NYPD police officer pertaining to plaintiff's arrest.

Plaintiff further alleges that on April 14, 2011 and April 21, 2011, the discharged shell casings that were collected from the murder scene "were linked to another crime involving the same shell casings."  (Id. at ¶27).  According to the Amended Complaint, an individual named Shamiek Corbett had pled guilty to this other crime.  (Id. at ¶27).  The Amended Complaint is silent as to: 1) who, if anyone, reviewed these lab reports in April 2011; and, 2) whether these reports were turned over to the QCDA at that time.

Plaintiff alleges that approximately two years later, in May 2013, NYPD Detective Lusk reviewed a lab report showing that the shell casings from the two crimes matched.  (Id. at ¶28).  However, the Amended Complaint is once again silent as to whether the QCDA was notified about this development in May 2013, by Detective Lusk or anyone else at

the NYPD.  Instead, the Amended Complaint alleges that nearly a year later, in April 2014, the shell casings from the Champell murder were retested, presumably by the NYPD.[2]  (Id. at ¶29).

Plaintiff claims that the information about the matching shell casings was provided to his criminal defense counsel in May 2014, approximately one month after they were retested, during the jury selection phase of his murder trial.  (Id. at ¶31).  Plaintiff does not allege any facts regarding to whom the information about the matching shell casings was known, and at what point prior to the disclosure of this information to plaintiff's counsel prosecutors possessed this information.

Instead, plaintiff alleges that a hearing was held on December 19, 2014 and January 16, 2015 regarding whether Assistant District Attorney ("ADA") Karen Ross failed to turn over this allegedly exculpatory material.  (Id. at ¶32).  The Amended Complaint is conspicuously silent about what testimony was elicited about the allegedly "late" disclosure of this evidence at the hearing, and even more telling, the Amended Complaint makes no mention of the finding of the Court hearing regarding the issue of the purported withholding of exculpatory evidence.  However, on February 13, 2015, the Honorable Richard L. Buchter found that "based upon the credible evidence introduced at the hearing . . . due to a bureaucratic error by the police department, the assigned district attorney Karen Ross was not informed of the ballistics match as she should have been under ordinary circumstances and in the existing policies and protocols."[3] February 13, 2015 Proceedings, Depoian Decl. at Exhibit B, p. 10:2-7.

---

[2] There is no explanation for why the shell casings were retested.

[3] This finding of the New York State Supreme Court can be considered on this motion to dismiss for several reasons.  First, because plaintiff explicitly references the hearings in his Amended Complaint, the minutes are incorporated by reference into the pleadings.  See Obilo v. City Univ. Of. N.Y., 01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886, at **13-14 (E.D.N.Y. Feb. 28, 2003).  Finally, the Court can take judicial notice of public documents filed in connection with

The Court further found that there was "no credible evidence that the Brady violation which did occur, resulted from intentional conduct by the assigned assistant [district attorney], nor was the conduct of the law enforcement of such nature to be so egregious that due process principles would absolutely bar the government from invoking judicial process . . ."[4]  Id.  Nevertheless, plaintiff alleges that a new trial was held and on December 10, 2015, he was acquitted of all charges.  (Id. at ¶¶ 34, 36).

As for the second trial, plaintiff claims that a cell phone belonging to the same suspect who used the murder weapon to which the shell casings from the Champell murder matched was found at the scene of the crime, and that this evidence was disclosed for the first time during the course of the trial.  (Id. at ¶35).  Once again, the Amended Complaint is silent as to who allegedly knew the information about the cell phone and at what point in the prosecution prior to the disclosure of this evidence to plaintiff, if any, it was obtained by the prosecutors.

Pursuant to 42 U.S.C. §1983, plaintiff brings two factually contradicting claims against the City of New York pursuant to Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978). Plaintiff premises his first claim on the ADA's failure to timely disclose the aforementioned purportedly exculpatory evidence material to his defense, which he claims resulted in a constitutional violation pursuant to Brady v. Maryland, 373 U.S. 83 (1963).  (Id. at ¶50).  He further alleges that the QCDA has a policy of permitting and encouraging the cover up of the withholding of exculpatory evidence.  (Id. at ¶53).  Plaintiff's second theory of Monell liability is nearly identical to his first, with the exception that this claim is premised on the withholding of

_____

state court proceedings "to establish the fact of such litigation and related filings."  Kramer v. Time Warner Inc., 937 F. 2d 767, 774 (2d Cir. 1991).

[4] Further, these minutes reveal that a mistrial was granted at the request of Newson (and his criminal co-defendants), not because the Court found there was a Brady violation, as plaintiff insinuates in his Amended Complaint.  (See Ex. B at p. 7:17 ("The Court granted your mistrial."))

evidence by the NYPD.  Plaintiff also alleges that <u>both</u> the QCDA and the NYPD "presented" false testimony against him and arrested plaintiff knowing of exculpatory evidence, although plaintiff does not plead any facts whatsoever to support such claims.  (<u>Id.</u> at ¶¶50, 61).  For the reasons set forth herein, plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice.

<u>**STANDARD OF REVIEW**</u>

To survive a motion to dismiss under FRCP 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  In considering a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all inferences in the plaintiff's favor.  <u>Keilver v. Harlequin Enters. Ltd.</u>, 751 F.3d 64, 68 (2d Cir. 2014).  However, this rule is inapplicable to any conclusory statements alleged in a complaint.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)("The tenant that a court must accept as true all of the allegations contained in a  complaint is inapplicable to legal conclusions.").

A plausible claim exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Twombly</u>, 550 U.S. at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  <u>Ashcroft</u>, 556 U.S. at 678.  A plaintiff must "nudge the claims in his complaint "across the line from conceivable to plausible" to survive dismissal.  <u>Twombly</u>, 550 U.S. at 570.

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS FAILED TO STATE A CLAIM THAT HIS FOURTEENTH AMENDMENT DUE PROCESS *BRADY* RIGHTS WERE VIOLATED.[5]**

**A.    Plaintiff has not Adequately Alleged that his <u>Brady</u> Rights Were Violated by the QCDA.**

Plaintiff alleges that lab reports were disclosed to his defense counsel for the first time during jury selection of his first murder trial which indicated that the murder weapon had been used in an earlier crime for which someone else had pled guilty.  (<u>See</u> Depoian Decl., Ex. A at ¶¶ 28, 31).  Plaintiff further claims that a cell phone supposedly belonging to another murder suspect – the same person whom was accused of the earlier attempted murder – was found at the scene of the crime, and that this was not disclosed until his second trial.  (<u>See id.</u>at ¶ 35).

"The basic rule of <u>Brady</u> is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment."   <u>United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir. 2001).  A <u>Brady</u> violation occurs when:  (1) the government acts deliberately or inadvertently; (2) to suppress favorable evidence due to its exculpatory or impeachment quality; and (3) the failure to disclose the evidence results in prejudice.  <u>United States v. Rivas</u>, 377 F.3d 195, 199 (2d Cir. 2004).  A properly pled <u>Brady</u> claim must adduce facts that demonstrate the presence of all three elements.

---

[5] Plaintiff alleges somewhat interchangeably that both that his "Fourth Amendment" rights were violated by the QCDA and that the QCDA and NYPD failed to disclose material favorable to his defense in violation of his due process <u>Brady</u> rights.  (Id. at ¶¶50, 54, 61).  However, plaintiff does not plead any facts whatsoever suggesting that the QCDA, or NYPD for that matter, arrested or maliciously prosecuted him in violation of his Fourth Amendment rights.  Thus, plaintiff's potential <u>Monell</u> claim could only plausibly derive from an underlying violation of his <u>Fourteenth</u> Amendment rights.  Regardless, for a discussion of the reasons why plaintiff has failed to allege a violation of his Fourth Amendment rights, see <u>Point</u> II, <u>supra</u>.

The Amended Complaint fails to establish all three elements constituting a <u>Brady</u> violation.  While plaintiff alleges that purportedly exculpatory evidence about the weapon and the cell phone was produced four and/or five years after his arrest, this fact does not, without more, give rise to a <u>Brady</u> violation.  With respect to the lab reports, the Amended Complaint is silent as to at what point prior to the time these lab reports were turned over to plaintiff's counsel, the NYPD provided the lab reports to prosecutors.  Without this fact, plaintiff has not alleged that any ADA deliberately or inadvertently suppressed evidence favorable to plaintiff. With respect to the cell phone, once again, the Amended Complaint is silent as to when this evidence was discovered and to whom it was known, and similarly, without these facts, plaintiff has not alleged that a <u>Brady</u> violation occurred with regards to the cell phone.

Moreover, the findings of the New York Supreme Court, which are incorporated by reference into the Amended Complaint, and/ or which the Court may take judicial notice of, render plaintiff's claim implausible under <u>Iqbal</u>.  The Honorable Judge Buchter found that "based upon the credible evidence introduced at the hearing . . . due to a bureaucratic error by the police department, the assigned district attorney Karen Ross was not informed of the ballistics match as she should have been under ordinary circumstances and in the existing policies and protocols." (Depoian Decl. at Exhibit B, p. 10:2-7.)  The Court further found that there was "no credible evidence that the <u>Brady</u> violation which did occur, resulted from intentional conduct by the assigned assistant [district attorney] . . ."  <u>Id.</u>  Taking this as true and in the light most favorable to plaintiff, plaintiff has failed to state a claim that a <u>Brady</u> violation resulted from the intentional or inadvertent actions of any ADA with regards to the lab reports.

Regardless, without alleging specific facts regarding whether and when prosecutors were in possession of this information, the conclusion cannot plausibly be drawn that

this information was deliberately or inadvertently suppressed due to its exculpatory or impeachment quality. The requirement that <u>facts</u> – as opposed to "labels and conclusions" – be set forth in the complaint is significant, because "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." <u>Twombly</u>, 550 U.S. at 558.

**B. Plaintiff has not Adequately Alleged that his <u>Brady</u> Rights Were Violated by the NYPD.**

Plaintiff alleges that on May 2, 2013, NYPD Detective Lusk reviewed a lab report showing that shell casings from two crimes matched. (<u>Id.</u> at ¶28). However, the Amended Complaint is once again silent as to whether or when the NYPD notified the QCDA about this development.[6] Without these facts, plaintiff has not alleged that any member of the NYPD deliberately or inadvertently suppressed evidence favorable to plaintiff.

**C. Plaintiff's Acquittal Precludes his <u>Brady</u> Claim.**

Even assuming, <u>arguendo</u>, that the Court finds that plaintiff has sufficiently alleged a viable claim that exculpatory evidence was deliberately suppressed by some governmental actor, plaintiff's acquittal in the underlying criminal action bars any purported claim under <u>Brady</u>. In the absence of a criminal conviction, a criminal defendant cannot demonstrate the government's failure to disclose resulted in a due process violation. <u>See</u> <u>e.g.</u>, <u>Ambrose v. City of New York</u>, 02-CV-10200 (KMK) 623 F. Supp. 2d. 454, 469-71 (2009). To the contrary, "a prosecutor's failure to turn over exculpatory or impeachment evidence is a <u>Brady</u> violation rising to the level of constitutional error only when this failure 'undermine[s]

---

[6] Moreover, the Amended Complaint alleges that in April 2014, the shell casings from the Champell murder were <u>retested</u> by the NYPD. According to the Amended Complaint, the results of the retesting were expeditiously produced to plaintiff by the QCDA in May 2014, the very next month. (<u>Id.</u> at ¶31).

confidence in the outcome of the trial.'"  Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985).  "[A]n acquittal extinguishes a Section 1983 plaintiff's due process claim for nondisclosure of Brady material."  Id. at 471; Dufort v. City of New York, 12-CV-2283 (SMG), 2016 U.S. Dist. LEXIS 56719, at *25 (E.D.N.Y. Apr. 28, 2016); Pizarro v. City of New York., 14-CV-507 (KAM)(VPP), 2015 U.S. Dist. LEXIS 131471, at *22 n9 (E.D.N.Y. Sep. 29, 2015); Cannistraci v. Kirsopp, 10-CV-980 (MAD)(DRH), 2012 U.S. Dist. LEXIS 68399, at *51-52 (N.D.N.Y. May 16, 2012).

Brady violations occur only in cases when non-disclosure prejudices a criminal defendant's ultimate conviction.  Coppa, 267 F.3d at 140 (quoting Strickler v. Greene, 527 U.S. 263, 281 (1999)) ("Strictly speaking, there is never a real 'Brady violation' unless the [Government's] nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").  Because plaintiff was acquitted, he cannot maintain a Brady claim and therefore, he did not suffer any a constitutional violation.

## POINT II

### PLAINTIFF HAS FAILED TO STATE A CLAIM THAT HIS FOURTH AMENDMENT RIGHTS WERE VIOLATED.

At times, it appears that plaintiff purports to premise his Monell claim on, inter alia, a violation of his Fourth Amendment rights.  See Depoian Decl., Ex. A at ¶ 61.  However, plaintiff alleges no facts whatsoever in support of his allegation that his Fourth Amendment rights were violated, and inasmuch as plaintiff alleges his rights were violated because exculpatory evidence was not timely disclosed, this claim is premised under the Fourteenth Amendment, and for the reasons discussed supra, must fail.

-9-

**A.**  **Plaintiff Does Not Allege Facts to Support a False Arrest Claim Against Any Member of the NYPD.**

To the extent that plaintiff purports to bring a claim for false arrest, this claim fails not only because he has failed to sufficiently allege such a claim but also because plaintiff has failed to name any individual actor who allegedly subjected him to said false arrest.  To state a claim for false arrest,[7] a plaintiff must allege: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003)(internal quotation omitted).  Plaintiff must allege the personal involvement of individual defendants to plausibly allege a constitutional deprivation.  See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (holding that a plaintiff must demonstrate defendants' personal involvement in alleged constitutional violations to receive damages under §1983); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983"); Gaines v. Armor Health Care, Inc., 2013 U.S. Dist. LEXIS 174241, at *8 (E.D.N.Y.  Dec. 9, 2013) ("A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law") (internal citation omitted)).

Here, plaintiff has failed to allege any facts about his arrest other than to state that it was "false."  Nor does he allege any personal involvement in his arrest by any individual police officer.  Plaintiff alleges only that "the Police Department," arrested plaintiff "with evidence that was exculpatory to him," (see Ex A at ¶61), although plaintiff does not actually

---

[7] "Claims for false arrest or malicious prosecution [] brought under §1983 . . . are 'substantially the same' as claims for false arrest or malicious prosecution under state law.'" Jocks v. Tavernier, 316 F. 3d 128, 134 (2d Cir. 2003)(internal citation omitted).

allege what exculpatory evidence was known at the time of plaintiff's arrest.  Nor does plaintiff allege which officer knew of this exculpatory information.  "Generalized claims about what 'the police' did or knew fails to give the 'fair notice' required by FRCP 8(a)."  Hamilton v. City of New York, 16-CV-1255 (ARR)(SMG), 2017 U.S. Dist. LEXIS 16296, at **8-9 (E.D.N.Y. Feb. 6, 2017).  Because plaintiff has provided "no factual basis to distinguish" the conduct of any officer, the Amended Complaint fails "to satisfy this minimum standard."  Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001).  Plaintiff's does no more than state in boilerplate fashion that he was false arrested, and because his claim is only brought against the City of New York and does not allege any personal involvement on the part of an individual, he cannot maintain a claim for false arrest.

**B.      Plaintiff Does Not Allege Facts to Support a Malicious Prosecution Claim Against Any Member of the NYPD.**

To the extent that plaintiff purports to bring a claim for malicious prosecution, this claim fails not only because he has failed to sufficiently allege such a claim but also because plaintiff has failed to name any individual actor who allegedly subjected him to said malicious prosecution.  To state a claim for malicious prosecution, plaintiff must allege: "(1) the initiation of the proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."  Id. at 72 (internal quotation omitted).  Once again, plaintiff has failed to allege any facts tending to show that he was maliciously prosecuted.  Nor has plaintiff alleged any personal involvement in his prosecution by any officer.[8,9]  While plaintiff alleges that unspecified

_____

[8] Plaintiff's allegation that it was police officers, and not ADAs, who maliciously prosecuted him belies plaintiff's allegation – which is the premise of one of his Monell claims against the City of New York – that it was the ADAs who withheld evidence against him in violation of his Fourteenth Amendment rights.  Plaintiff's legal claims are premised on contradicting factual assertions that render his Amended Complaint implausible.  See In re LIBOR-Based Fin. Instruments Antitrust Litig., 27 F. Supp. 3d 447, 469 (S.D.N.Y. Jun. 23, 2014)(stating that while plaintiffs are entitled to plead in the alternative or even inconsistently, this "does not obviate the

members of the NYPD  and the QCDA both "used false or misleading testimony or argument" (<u>see</u> Ex A at ¶¶50, 61), plaintiff is silent as to the nature of this false testimony and when it was made.  Nor does plaintiff allege which, if any, police officer "initiated" a malicious prosecution against him.[10]   In the absence of any allegation of an individual act or acts of wrongdoing, plaintiff's claim for malicious prosecution must be dismissed.

**POINT III**

**PLAINTIFF'S *MONELL* CLAIMS AGAINST**
**THE QCDA IS UNTENABLE.**

**A.     There Has Been No Underlying Constitutional Violation.**

As set forth in <u>Points I</u> and <u>II</u>, <u>supra</u>, plaintiff's underlying Constitutional rights were not violated by the QCDA.  A <u>Monell</u> claim cannot lie where there is no underlying constitutional violation, and for this reason alone, his <u>Monell</u> claim must be dismissed.  <u>See Matican v. City of New York</u>, 524 F.3d, 151, 154 (2d Cir. 2008).

---

need for each of plaintiffs' . . . allegations to be 'plausible on its face.'")(citing <u>Twombly</u>, 550 U.S. at 570).

[9] Furthermore, plaintiff has, rightfully, not named the prosecutor as a defendant because any claims against her would be barred by absolute immunity.  <u>See e.g.</u> <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [his] role as an advocate for the State, are entitled to the protections of absolute immunity." ).  Because the immunity is absolute, it cannot be overcome by allegations that acts undertaken by the prosecutor were intentional or even malicious.  <u>See</u> <u>Shmueli v. City of New York</u>, 424 F.3d 231, 237 (2d Cir. 2005) (holding that it is well-established that a prosecutor who acts within the scope of his duties is absolutely immune from a §1983 lawsuit even when knowingly prosecuting an innocent individual). Allegations that a prosecutor violated his/her obligations to disclose allegedly exculpatory evidence does not pierce absolute immunity.  <u>See</u> <u>e.g.</u> <u>Watson v. Grady</u>, No. 09 Civ. 3055 (KMK), 2010 U.S. Dist. LEXIS 103473, at *56 (S.D.N.Y. Sept. 30, 2010).

[10] Plaintiff's allegation that the prosecution "may have been retaliation against him" because he was a registered confidential informant for the police department is nonsensical and should not be considered. (Depoian Decl., Ex. A at ¶46).

**B.       The City Cannot be Liable for the QCDA's Prosecutorial Decisions.**

Under New York law, the City cannot be liable for the QCDA's decisions regarding prosecution.  See Pinaud v. Cty. of Suffolk, 52 F. 3d 1139, 1153 n. 14 (2d Cir. 1995); Bellamy v. City of N.Y., 12-CV-1025 (AMD)(PK), 2017 U.S. Dist. LEXIS 75306, at **105-08 (E.D.N.Y. May 17, 2017).  "While, the City is a properly named interested party, it is not itself liable for the conduct of the district attorney in failing to properly train his assistants with respect to specific aspects of prosecuting criminals."  Jones v. City of N.Y., 12-CV-1739(JBW), 988 F. Supp. 2d. 305, 314, 316 (E.D.N.Y. 2013) ("With respect to building management, maintenance decisions, or discrimination against employees, for example, the district attorney can be considered a municipal actor.")

In Van de Kamp v. Goldstein, 555 U.S. 335, 345-48, 129 S. Ct. 855 (2009) the Supreme Court considered whether absolute prosecutorial immunity extends to claims against supervisors, and the district attorney's office itself, where the prosecution failed to disclose impeachment material due to: (1) a failure properly to train prosecutors, (2) a failure to properly supervise prosecutors, or (3) a failure to establish an information system containing potential impeachment material about informants.  The Court held that district attorney office decisions regarding training and supervision on issues of law, specifically like disclosure requirements under Brady, are prosecutorial functions entitled to absolute immunity and are not actionable against supervisors or the office.[11]  Thus, a prosecutor's Brady decisions fall under the umbrella of prosecutorial duties for which the City of New York is not a proper defendant.  See Jones, 988 F. Supp. 2d 305 at 317; Bellamy 2017 U.S. Dist. LEXIS 75306 at *107, *108 ("In light of the Supreme Court's decision in Van de Kamp, acts taken in connection with a prosecutor's 'basic

---

[11] The Court likewise found that supervisory liability claims hinged on underlying misconduct by the prosecutors, who were entitled to absolute immunity.  Id.

trial advocacy and prosecutorial duties – including <u>Brady</u> decisions – should . . . be treated as 'prosecutorial conduct.'") (citing to <u>Jones</u>).

**C.   Plaintiff Fails to Demonstrate an Official Policy or Custom Caused His Constitutional Injury.**

As it pertains to his <u>Monell</u> claim against the QCDA, the exact theory under which plaintiff intends to proceed is unclear from the Amended Complaint.  In essence, however, plaintiff alleges that: 1) ADAs withheld favorable material evidence from the plaintiff (<u>id.</u> at ¶ 48); and/ or that 2) the City failed to properly train and supervise the ADAs involved in plaintiff's prosecution with regard to matters involving the continuing obligation to, in essence, disclose exculpatory evidence.  (<u>Id.</u> at ¶ 52.).  Plaintiff also alleges that the QCDA "presented" false testimony against him at his trial and "arrested" plaintiff knowing of exculpatory evidence in violation of his Fourth Amendment rights; these allegations, however, are made in boilerplate fashion only and plaintiff does not plead any facts whatsoever to support such claims.  (<u>Id.</u> at ¶¶48, 50).  Based on plaintiff's allegations, it appears that he intends to proceed under the theory that there was an alleged pattern and practice of withholding exculpatory evidence that was so widespread as to have the force of law; and/or, that the City was deliberately indifferent to the need to train ADAs regarding the disclosure of exculpatory evidence.  Both of these theories fail as a matter of law.

Under §1983, a municipality may not be held liable solely on the basis of <u>respondeat superior</u>.  <u>Monell v. Dep't of Soc. Servcs.</u>, 436 U.S. 658, 693-95 (1978); <u>Ricciuti v. N.Y.C. Transit Authority</u>, 941 F.2d 119, 122 (2d Cir. 1991).  Municipalities are, however, liable for "their <u>own</u> illegal acts."  <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011).  To hold a city liable under §1983, a plaintiff must plead and prove three elements: (1) an official policy or custom

-14-

that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).

There are four municipal actions that may give rise to Monell liability if adequately alleged: (1) an unconstitutional policy enacted by the municipality, Bd. of the Cnty. Comms. of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404-05 (1997); (2) a deliberate unconstitutional act by a municipal official with policy making authority, id. at 405; (3) an unconstitutional practice or custom that is "so persistent and widespread as to practically have the force of law," Connick, 563 U.S. at 61; or (4) a failure to train municipal employees such that the failure rises to the level of deliberate indifference to the constitutional rights of others, City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).  A plaintiff seeking to hold a municipality liable must further demonstrate "a direct causal link between the municipal action and the deprivation of [plaintiff's] federal rights." Brown, 520 U.S. at 404.  The "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees."  Id. at 405; see also City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

### i.      Plaintiff Fails to Allege Facts Sufficient to Establish an Unconstitutional Practice So Persistent and Widespread That It Constitutes a Custom or Usage.

A municipality may be found to have a custom that causes a constitutional violation when, "faced with a pattern of misconduct, [it] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007); see also City of Canton, 489 U.S. at 394-95 (O'Connor, J., concurring in part and dissenting in part) ("Where . . . a claim of municipal

-15-

liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of background events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution.");   Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992) ("So long as the [unlawful] practices of city officials are persistent and widespread, they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability.")(internal citations and quotations omitted).   "Isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."   Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012); Giaccio v. City of New York, 308 Fed. Appx. 470, 472 (2d Cir. 2009).

　　　　　Here, plaintiff summarily alleges that the QCDA has a policy "either express or implied, to permit and encourage its ADA's to withhold exculpatory evidence from defendants and its counsel."  (Depoian Decl., Ex A at ¶53).   Although plaintiff offers no facts to support the existence of a custom of withholding exculpatory evidence by the QCDA, he  annexes to his Amended Complaint as "Exhibit A," a list of eighty-four (84) cases, purporting to reflect "Misconduct Cases" involving the QCDA"[12] (id. at Ex A, p.1.), which he claims is sufficient to support his Monell claim against the QCDA.   For the reasons set discussed below, plaintiff is wrong.

　　　　　As an initial matter, fifty-six (56) of these cases are listed under a subsection entitled "Decisions (1985 – 2004) Reversing Convictions Because Queens County Prosecutors Knowingly Presented False or Misleading Evidence or Argument." (See id., Ex. A, p. 4).   As

---

[12] Although this document is not cited to in the Amended Complaint, defendant surmises plaintiff intends to incorporate this document by reference in support of this alleged policy and practice.

discussed <u>supra</u>, plaintiff does not allege what false evidence was presented against him.  Nor does he allege to whom, or by whom this evidence was presented.  Even the evidence about the matching shell casings – the allegedly "exculpatory" evidence – was, by all accounts, provided to him <u>prior</u> to his trial, at which he was acquitted.  Therefore, the fifty-six cases listed under subsection "b." of Exhibit A, which involve incidents of "knowingly presenting false evidence" are not comparable acts that would support the existence of an unconstitutional custom or practice that caused plaintiff's particular injuries.  <u>Boddie v. City of New York</u>, 2016 U.S. Dist. LEXIS 50248, at *8 n.3 (S.D.N.Y. Apr. 13, 2016) (citing <u>Rasmussen v. City of New York</u>, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011).

The remaining twenty-eight cases listed by plaintiff purport to show convictions that were overturned because the QCDA wrongfully withheld evidence from the defense.  As an initial matter, twenty-five of these cases occurred from 1985 – 1998, a date range of twelve to twenty-five years <u>before</u> plaintiff's arrest.  Regardless, **<u>none</u>** of these cases involve the allegation that a ballistics report, or any other lab test for that matter, were withheld from the prosecution.  Indeed, <u>all</u> of the decisions involve facts fundamentally dissimilar to those present here, such as the failure of the prosecution to turn over such potential impeachment evidence as: conflicting initial descriptions of the perpetrator, inconsistent statements made by complainants and witnesses, witness cooperation agreements, witness's criminal histories, the basis for a testifying expert's opinion at trial that the perpetrator's DNA was a match (<u>People v. Davis</u>, 196 A.D. 2d 597 (2nd Dept. 1993)), and medical records showing no signs of sexual abuse in a rape case (<u>People v. Baba-Ali</u>, 179 A.D. 2d 725 (2nd Dept. 1992)).[13]  The factual bases of these cases are a far cry from the allegation here that ballistics lab reports related to testing done in the course of

---

[13] In <u>Baba-Ali</u>, the conviction was notably <u>also</u> overturned because of ineffective assistance of counsel.

-17-

the investigation into the crime itself was withheld and, thus, are too attenuated to satisfy the Connick requirement that plaintiff demonstrate a pattern of specific violations 'similar' to those at issue in this case.  Cf. Connick, 63 U.S. at 62.  Thus, these cases cannot support plaintiff's Monell claim.

ii. Plaintiff Fails to Allege Facts Sufficient to Establish a Failure to Train or Supervise Rising to the Level of Deliberate Indifference.

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61.  See also, Meogrossi v. Colonel John Aubrey et al., No. 3:09-CV-00301 (JDM), 2011 U.S. Dist. LEXIS 35254, *31, (W.D.Ky. March 31, 2011); Agnello v. Straitiff et al., 2011 U.S. Dist. LEXIS 41144 at *6 (W.D.Pa. April 15, 2011)("in limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens rights might rise to the level of an official policy for purposes of [section] 1983") (quoting, Connick).  "[T]he inadequacy of [officer] training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officer] come into contact." City of Canton, 489 U.S. at 388.

In order to prove liability for failure to train, therefore, plaintiff must demonstrate a "pattern of similar constitutional violations" by employees sufficient to place policymakers on notice "that a course of training is deficient in a particular respect." Id. at 9-10 (emphasis added).  Significantly, evidence of one instance in which municipal employees violated a citizen's rights is not enough to show the constructive acquiescence of senior policy-making officials. Sarus v. Rotundo, 831 F.2d 397, 402-03 (2d Cir. 1987); Newton, 681 F. Supp. at 473, 487 (S.D.N.Y. 2010).  Rather, to show there was a failure to train employees, plaintiff must prove a "pattern" of conduct, see Reynolds v. Guiliani, 586 F.3d 183, 192 (2d. Cir. 2007), that

-18-

violates the civil rights of citizens "repeatedly," Riccuiti, 941 F.2d at 123, and "persistent[ly]," Batista v. Rodriguez, 702 F.2d 393, 397 (2d. Cir. 1983), on a "widespread" basis.  Connick, for example, involved the prosecutor's failure to disclose a lab report that reflected potentially exculpatory blood test results.  The Court rejected the argument that four prior Brady reversals could constitute evidence of a "pattern," because "[n]one of those [prior] cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind."

  As discussed in Point III.C.i, supra, plaintiff has not sufficiently alleged that the City was on actual or constructive notice of any widespread practice of individual prosecutors withholding exculpatory evidence, either at the time of the underlying incident or otherwise. "[W]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberatively chosen a training program that will cause violations of constitutional rights."  Boddie, 2016 U.S. Dist. LEXIS 50248, at *12 (quoting Connick, 563 U.S. at 62).  Moreover, as discussed in Point III.C.i, supra, none of the cases cited by plaintiff involve the allegation that a ballistics report, or any other lab test for that matter, were withheld from the prosecution, and all of the decisions cited by plaintiff involve facts fundamentally dissimilar to those present here.  These cases are too broad to satisfy the Connick requirement that plaintiff demonstrate a pattern of specific violations 'similar' to those at issue in this case.  Cf. Connick, 63 U.S. at 62.   Thus, these cases cannot support plaintiff's Monell claim.

  Accordingly, because plaintiff does not plausibly allege that the City was on notice of deficiencies in its training or supervision process at the time of his injury, and because those deficiencies do not constitute deliberate indifference to plaintiff's rights, plaintiff's Monell claim fails as a matter of law.

## POINT IV

## PLAINTIFF'S *MONELL* CLAIM AGAINST THE NYPD IS UNTENABLE.

**A.     There Has Been No Underlying Constitutional Violation.**

As set forth in Points I and II, supra, plaintiff's underlying Constitutional rights were not violated by the NYPD, and for this reason alone, plaintiff's Monell claim must fail.  See Matican v. City of New York, 524 F.3d at 154.

**B.     Plaintiff Fails to Demonstrate an Official Policy or Custom Caused His Constitutional Injury.**

The exact theory under which plaintiff intends to premise his Monell claim against the NYPD is also unclear from the Amended Complaint.[14]   In essence, however, plaintiff's Monell claim against the NYPD is identical to his Monell claim against the QCDA. Plaintiff alleges that: 1) the NYPD permitted and encouraged "its employees" to withhold Brady material generally (id. at ¶ 64); and/ or that 2) policymaking officials at the NYPD failed to properly train and supervise "its employees" involved in plaintiff's prosecution with regard to matters involving the continuing obligation to disclose exculpatory evidence.  (Id. at ¶ 63). Plaintiff also alleges that the NYPD "presented" false testimony against him at his trial and arrested plaintiff knowing of exculpatory evidence in violation of his Fourth Amendment rights, although once again these allegations are made in boilerplate fashion only.  Plaintiff does not plead any facts whatsoever to support such claims, such as, for example, when or by whom this false evidence was "presented," or the nature of the exculpatory evidence that was known at the time of plaintiff's arrest that was disregarded.  (Id. at ¶¶59, 61).

---

[14] A full recitation of the legal parameters of a Monell claim is set out more fully in Point III.C., supra.

Thus, once again, it appears that plaintiff intends to proceed under the theory that there was an alleged pattern and practice by the NYPD of withholding exculpatory evidence that was so widespread as to have the force of law; or, that the City was deliberately indifferent to the need to train police officers regarding the disclosure of exculpatory evidence.  For the reasons that follow, both of these theories fail as a matter of law.

> **i.** **Plaintiff Fails to Allege Facts Sufficient to Establish an Unconstitutional Practice So Persistent and Widespread That It Constitutes a Custom or Usage.**

In the context of a motion to dismiss, the mere assertion that a municipality has an unlawful policy or practice is insufficient.  Missel v. County of Monroe, 351 Fed. Appx. 543, 545 (2d Cir. 2009) (summary order) (affirming dismissal of Monell claim where plaintiff "made no factual allegations that would support a plausible inference that the [defendant]'s 'policies' or 'customs' caused . . . violations of [plaintiff]'s rights"); see also Iqbal, 556 U.S. at 680 (dismissing complaint where plaintiff merely stated that defendants subjected him "to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'"); Davis v. City of New York, 07-CV-1396 (RPP), 2008 U.S. Dist. LEXIS 47869, at **16-18 (S.D.N.Y. June 19, 2008).  Rather, "[t]o allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality."  See Missel, 351 Fed. Appx. at 545.

It is also well established that isolated acts by non-policymaking employees are generally not sufficient to support an inference that his experience is attributable to an unconstitutional policy of the City of New York.  Cf. Trinidad v. City of New York, 06-CV-3002

-21-

(BMC)(LB), 2006 U.S. Dist. LEXIS 51776, at *8 (E.D.N.Y. Jul. 7, 2006) ("A single incident alleged in a complaint, especially a single incident involving only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy"). Where a plaintiff can only show "the isolated misconduct of a single, low-level officer" but has not offered proof of an official policy that led to the constitutional violation, the claim must fail. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 831 (1985) (Brennan, J., concurring.)

Here, plaintiff's Amended Complaint contains the conclusory allegation that the NYPD has a policy "to permit and encourage its employees to withhold exculpatory evidence from defendants and its counsel."  (Depoian Decl., Ex A at ¶64).  However, even assuming, arguendo, that plaintiff's claims amount to a violation of his constitutional rights, plaintiff has failed to set forth any factual allegation whatsoever to support the plausible inference that this constitutional violation occurred pursuant a policy or custom of the City of New York inasmuch as it pertains to the NYPD.  See Missel, 351 Fed. Appx. at 545.  The cases listed in Exhibit A to plaintiff's Amended Complaint reference alleged wrongdoing by the QCDA, not of any police officer.  Plaintiff does not cite to or reference any incident other that the one involving plaintiff that would support a plausible inference that the alleged constitutional violation took place pursuant either to a formal course of action or the act of a person with policymaking authority.

Reading the allegations in plaintiff's complaint as strongly as possible in his regard, plaintiff has not pled sufficient facts to establish the existence of an official custom, policy, or practice that led to the alleged violation of his constitutional rights, and therefore plaintiff's claim for municipal liability premised on alleged wrongdoing by the NYPD must be dismissed.

### ii. Plaintiff Fails to Allege Facts Sufficient to Establish a Failure to Train or Supervise Rising to the Level of Deliberate Indifference.

"[T]he inadequacy of [officer] training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officer] come into contact."  <u>City of Canton</u>, 489 U.S. at 388.  Again, in order to prove liability for failure to train, therefore, plaintiff must demonstrate a "pattern of <u>similar</u> constitutional violations" by employees sufficient to place policymakers on notice "that a course of training is deficient in a particular respect."  <u>Id.</u> at 9-10 (emphasis added).  Significantly, evidence of one instance in which municipal employees violated a citizen's rights is not enough to show the constructive acquiescence of senior policy-making officials.  <u>Sarus v. Rotundo</u>, 831 F.2d 397, 402-03 (2d Cir. 1987); <u>Newton</u>, 681 F. Supp. at 473, 487 (S.D.N.Y. 2010).  Rather, to show there was a failure to train employees, plaintiff must prove a "pattern" of conduct, <u>see</u> <u>Reynolds v. Guiliani</u>, 586 F.3d 183, 192 (2d. Cir. 2007), that violates the civil rights of citizens "repeatedly," <u>Riccuiti</u>, 941 F.2d at 123, and "persistent[ly]," <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d. Cir. 1983), on a "widespread" basis.

As discussed in <u>Point</u> <u>IV.B.i</u>, <u>supra</u>, plaintiff has not plausibly alleged that the City was on actual or constructive notice of <u>any</u> widespread practice of police officers withholding exculpatory evidence, either at the time of the underlying incident or otherwise. Plaintiff's generic assertions offer no insight into the City's purposeful action, nor does plaintiff point to any prior specific incidents of employee misconduct.  "[W]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberatively chosen a training program that will cause violations of constitutional rights." <u>Boddie</u>, 2016 U.S. Dist. LEXIS 50248, at *12 (quoting <u>Connick</u>, 563 U.S. at 62).

-23-

Accordingly, because plaintiff does not plausibly allege that the City was on notice of the deficiencies in its training or supervision process at the time of his injury and because those deficiencies do not constitute deliberate indifference to plaintiff's rights, plaintiff's Monell claim fails as a matter of law.

### POINT V

### THE COURT SHOULD NONETHELESS DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

In the event that this Court does not dismiss plaintiff's State law claims for the reasons discussed in Point VI and VII, infra, defendant submits that this Court should decline to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c)(3).  See Castellano v. Bd. of Trustees, et al., 937 F.2d 752, 758 (2d Cir. 1991), cert. denied, 502 U.S. 941 (1991) ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262-63 (2d Cir. 2006).

### POINT VI

### CLAIMS FOR FALSE ARREST AND MALICIOUS PROSECUTION CANNOT BE BROUGHT AGAISNT THE CITY OF NEW YORK.

Should the Court opt to exercise supplemental jurisdiction over plaintiff's pendent State law claims, these claims should be dismissed.  Under State law, plaintiff's claims against the City could arise only under the doctrine of respondeat superior, which requires that "an employer is answerable for the torts of an employee who acts within the scope of his or her employment."  See Rausman v. Baugh, 682 N.Y.S.2d 42, 43 (N.Y. App. Div. 1998).  However, "if there is no liability by the employee, there is no liability to impute to the employer."

-24-

Hamilton, 2017 U.S. Dist. LEXIS 16296, **11-12 ("[b]ecause plaintiffs fail to allege wrongdoing by any particular police officer, they also fail to state a claim against the City."). Because plaintiff has not pled a viable claim of false arrest or malicious prosecution against any officer, his false arrest and malicious prosecution claims against the City must be dismissed.

## POINT VII

### PLAINTIFF'S PENDENT STATE LAW "NEGLIGENT PROSECUTION" CLAIM SHOULD BE DISMISSED.

Plaintiff alleges a claim that the City has been negligent in its "duty . . . to train and supervise and otherwise control its Police Officers in the proper methods of providing exculpatory evidence, incidental to this matter, and in the course of their Police functions."[15] (Ex. A at ¶ 70).  However, in New York, as a matter of public policy, "there is no cause of action for negligent prosecution or investigation."  Mitchell v. Cty. of Nassau, No. 05-CV-4957 (SJF)(WDW), 2007 U.S. Dist. LEXIS 38711, at **41-43 (E.D.N.Y. May 24, 2007); see also, Jenkins v. City of New York, No. 91 Civ. 3639, 1992 U.S. Dist. LEXIS 8279, 1992 WL 147647, at *8 (S.D.N.Y. June 15, 1992) (dismissing claims described as negligent investigation, negligent training, negligent supervision, negligent disciplining, and negligent provision of incorrect information because these claims arose out of the same set of facts as those for false arrest and malicious prosecution and such claims are in contravention of public policy).  Here, plaintiff has failed to allege facts in support of his negligence claim that are distinct from his claims for false arrest, malicious prosecution, or due process, and accordingly, plaintiff's negligence claim must be dismissed.  See McCray v. City of New York, 2007 U.S. Dist. LEXIS 90875, at *101-02 (S.D.N.Y. Dec. 11, 2007).

---

[15] Once again, this claim belies plaintiff's claim that it was prosecutors, who withheld the aforementioned exculpatory evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the complaint be dismissed, with prejudice, pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, and further seeks such costs, fees and other relief as the Court deems just and proper.

Dated:　　　　New York, New York
　　　　　　　September 20, 2017

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
*Attorney for Defendant City of New York*
100 Church Street, Room 3-211
New York, New York 10007
(212) 356-2358


By:　　/s _____
　　　　Carolyn K. Depoian
　　　　Senior Counsel


cc:　　Andrew Plasse, Esq. (*Via* ECF)
　　　　*Attorney for Plaintiff*

-26-